IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY SINDLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11 C 7224 |
| ) | |
| SAXON MORTGAGE SERVICES, INC., ) | |
| OCWEN LOAN SERVICING, LLC, AND ) | |
| DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On October 12, 2011, plaintiff Jeffrey Sindles ("Sindles") filed a complaint (Dkt. No. 1 ("Complaint")) against defendants Saxon Mortgage Services, Inc. ("Saxon"), Ocwen Loan Servicing, LLC ("Ocwen"), and Deutsche Bank National Trust Company ("DBNTC") (collectively "Defendants"). Sindles seeks recovery from Defendants for fraud, breach of contract and implied covenants of good faith and fair dealing, promissory estoppel, unjust enrichment, negligent infliction of emotional distress, and alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/2, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). Ocwen and DBNTC have each moved to dismiss Sindles's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons detailed below, "Ocwen Loan Servicing, LLC's Motion to Dismiss" (Dkt. No. 9 ("Ocwen's Mot.")) is granted in part and denied in part, and "Deutsche Bank National Trust Company, As Trustee's Motion to Dismiss" (Dkt. No. 11 ("DBNTC's Mot.")) is granted.

BACKGROUND

At this stage in the litigation, the court under the law accepts the factual allegations set forth in Sindles's Complaint as true for purposes of ruling on the pending motion and draws all reasonable inferences in Sindles's favor. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). The facts set forth below are therefore stated from that perspective.

Sindles generally alleges that Defendants "engaged in illegal, unfair, and unlawful business practices that violate both federal and state law" while servicing a residential mortgage entered into by Sindles on December 29, 2006 by virtue of a written promissory note ("Note") and mortgage ("Mortgage") with non-party New Century Mortgage Corporation ("New Century"). (Compl. ¶¶ 11, 13.) Specifically, Sindles alleges "Defendants have charged [Sindles] and have sought to collect from [Sindles] various improper fees, costs, and charges that are either not legally due under the mortgage contract or applicable law, or that are in excess of amounts legally due." (*Id.* ¶ 12.) Saxon and Ocwen are both in the business of loan servicing. DBNTC is listed as the investor on Sindles's Mortgage. (*Id.* ¶¶ 4, 98-100.)

Starting on June 1, 2009, Sindles began to receive daily phone calls from a Saxon representative named "Jack" seeking Sindles's enrollment in a "Fast Track Rate Freeze." (*Id.* ¶ 14.) On July 27, 2009 Sindles received a voice message from Jack indicating that he could lock Sindles's interest rate for the next five years with "Fast Track Rate Freeze." (*Id.* ¶ 17.) Sindles returned Jack's call the same day, but was informed that Jack was no longer employed by Saxon and that the "Fast Track Rate Freeze" was not available. (*Id.* ¶ 18.) Instead, Sindles was offered enrollment in a "Home Affordable Modification Program" ("HAMP"), contingent on his submission of application materials, which would be mailed to him, and his payment for the first month trial period by August 1, 2009 (three days later). (*Id.* ¶ 19.) Between July 30, 2009 and November 1, 2009, Sindles made four payments according to the HAMP terms he was quoted over the phone. (*Id.* ¶¶ 21, 24, 26, 27.) Despite having never received the application package he was told he would be required to complete, Sindles received letters from Saxon

requesting additional information for processing the HAMP modification on August 26 and November 2, 2009. (*Id.* ¶¶ 22, 29.) On November 5, 2009, Sindles received an application packet outlining his loan modification under the HAMP program which included, inter alia, that under the program Saxon would not apply payments towards the Mortgage but instead send a report to the credit bureaus that Sindles was delinquent in payments. (*Id.* ¶ 30.) Sindles called Saxon informing them that he was not interested in HAMP enrollment based on these terms, but was told that, "you cannot be removed from the program once you are in it." (*Id.*)

From November 5, 2009 through May 16, 2011, Saxon continued to mismanage Sindles's account. (*See generally id.* ¶¶ 31-112.) Specifically, Saxon wrongfully deposited Sindles's payments into a suspense account, diverted Sindles's payments to pay an unnecessary and unauthorized homeowner's insurance policy, automatically placed Sindles into a "Saxon Alternative Modification Program" ("SAMP") from which he could not be removed, charged improper late fees, and threatened Sindles with foreclosure if he did not sign up for the "Home Affordable Foreclosure Alternative" ("HAFA") Short Sale Program. (*Id.* ¶¶ 28, 31, 40, 50, 57, 62, 65, 69, 73, 103, 110.) Saxon also erroneously reported delinquencies in Sindles's account to credit bureaus. (*See e.g. id.* ¶¶ 41-42, 45-46, 49, 67, 71, 85.) As a result of the fluctuating status of his Mortgage account, Sindles suffered damage to his personal credit, including denial of a credit line from Fifth Third Bank ("Fifth Third") based on Saxon's reporting that Sindles's Mortgage payments were delinquent, the lowering of an existing Fifth Third line of credit (twice) based on the reported delinquency in Sindles's credit report, and the lowering of an existing Home Depot line of credit based on the reported delinquency in Sindles's credit report. (*Id.* ¶¶ 23, 25, 74, 78.)

On May 16, 2011, Saxon informed Sindles, by letter, that the servicing of his loan would be transferred to Ocwen. (*Id.* ¶ 112.) Subsequently, Sindles made monthly mortgage payments to Ocwen on May 31, 2011 and July 12, 2011. (*Id.* ¶¶ 113-14.) Ocwen contacted Sindles by telephone on June 29, 2011 to inform him that his account was past due and that late fees had been assessed. (*Id.* ¶ 115.)

Sindles was told the late fee was based on an "outstanding balance in his escrow account," despite Sindles's assertions that no such account existed. (*Id.*) After taking over service of the Mortgage, Ocwen called Sindles several times per day regarding late fees. (*Id.* ¶ 116.) On July 11, 2011 Sindles contacted Ocwen regarding these calls and was told by a representative that $420.26 was still due from the June 1, 2011 statement. (*Id.*) Additionally, the representative informed Sindles that a reinstatement fee was due in the amount of approximately $1,700, and that his monthly payment would be increasing by $390.47 beginning the next month. (*Id.*)

## LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a plaintiff's allegations must allow "the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id*. However, "the plausibility requirement is not akin to a 'probability requirement . . .'" *Id*. The complaint must simply give defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).

The Seventh Circuit has interpreted *Iqbal* as "admonishing those plaintiffs who merely parrot the statutory language of the claims they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Without "some specific facts," the complaint is insufficient and fails to give defendant "fair notice." *Id*. However, a complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010).

ANALYSIS

1.  Claims Against Ocwen

    a.  Count I – Common law fraud

Ocwen argues that Sindles has failed to plead common law fraud with sufficient particularity and urges dismissal. (Ocwen's Mot. at 3.) The court agrees. Common law fraudulent misrepresentation in Illinois is met by a showing of: "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). The heightened pleading requirement of particularity articulated in Rule 9(b) of the Federal Rules of Civil Procedure is met by the pleading alleging the "who, what, when, where, and how" of the defendant's purportedly fraudulent conduct. *Id.*

In Count I, Sindles explicitly, and to the exclusion of Ocwen, lists the false statements made by Saxon, *Saxon's* knowledge those statements were false, *Saxon's* inducement of Sindles to modify the Mortgage, *Saxon's* intent to maximize its fees and income, *Saxon's* intent for Sindles's subsequent justifiable reliance on *Saxon's* statements, and the harm suffered by Sindles "as a direct and proximate cause of *Saxon's* actions." (Compl. ¶¶ 118-29 (emphasis added).) In fact, Ocwen's name is not even mentioned by Sindles in his discussion of his common law fraud claim, nor did Sindles allege any conduct by Ocwen that satisfies the heightened pleading requirement for fraud claims under Federal Rule of Civil Procedure 9(b). Viewing the allegations in the light most favorable to Sindles, Ocwen misrepresented to Sindles on June 29, 2011 and again on July, 11, 2011 that Sindles's account was past due and that Ocwen had charged late fees because of an outstanding balance in Sindles's escrow account. (*Id.* ¶¶ 115-16.) Sindles's response that he had no escrow account and "never made a late payment," however, suggests that Sindles did not rely on this misrepresentation to his detriment. (*Id.* ¶ 115.) Because Sindles has failed to allege reliance or harm with respect to Ocwen's conduct, the court grants Ocwen's motion and dismisses Count I without prejudice as alleged against Ocwen.

b. Count II – Breach of contract and implied covenants

Ocwen asserts that there is no contractual privity with Ocwen on the Mortgage and Note executed by New Century, and as such Ocwen cannot be held liable for breach of a contract to which it is not a party. (Ocwen's Mot. at 6.) Contractual actions can be brought by parties to a contract, parties with privity, or by third party beneficiaries to contracts. *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) (applying Illinois law). In Illinois, privity of contract is defined as a "mutual or successive relationship to the same rights of property." *Collins Co., Ltd. v. Carboline Co.*, 532 N.E.2d 834, 839 (Ill. 1988). Privity may exist, "by operation of law, by descent, or by voluntary or involuntary transfer." *Kaplan*, 266 F.3d at 602 (citing *Collins Co., Ltd.*, 125 Ill. 2d at 511). Sindles in Count II has alleged that both Saxon and Ocwen were successors to New Century on the Mortgage and Note. (Compl. ¶ 132.) As successor to New Century, Ocwen enjoyed the "same rights of property" as New Century by voluntary transfer of the contract. *Collins Co., Ltd.*, 125 Ill. 2d at 511. Sindles's allegations that Ocwen subsequently improperly charged late fees, misapplied funds to escrow accounts, and made false reports to the credit bureaus in breach of the Mortgage are well-pleaded. (Compl. ¶¶ 134-35, 137-39, 142.) Ocwen's motion to dismiss as to Count II is denied.

c. Count III – ICFA claim

Ocwen moves to dismiss Sindles's ICFA claim, arguing that Sindles has failed to plead his consumer fraud claim with particularity. The ICFA prohibits "unfair methods of competition and unfair *or* deceptive acts or practices." 815 ILCS § 505/2 (emphasis added). The Illinois Appellate Court has interpreted the statute to be disjunctive, allowing separate claims for unfair acts or practices and deceptive acts or practices. *Pappas v. Pella Corp.*, 844 N.E.2d 995, 1002 (Ill. App. Ct. 2006). In this case, Sindles alleges that Ocwen "violated the 'unfair' prong of the ICFA." (Compl. ¶ 154.) For claims falling under the unfairness prong, the factors used to evaluate a claim are "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Pappas*, 844 N.E.2d at 1002.

As an initial matter, Ocwen's reliance on the rule of particularity set forth in *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196 (Ill. App. Ct. 2005), is misapplied. The need for heightened pleading requirements applies only to the deceptive acts prong of the ICFA. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Sindles's allegations of "unfair" conduct nevertheless fail to state a claim for which relief can be granted under the ICFA. Based on the conduct attributable to Ocwen in paragraphs 112-16 and 150 of the Complaint, Sindles's allegations against Ocwen in his ICFA claim are virtually identical to his breach of contract claims. (*See* Compl. ¶ 150(b), (c), (e), (j), (l), (m), (n), (o), and (q) (describing Ocwen's allegedly unauthorized escrow account, charging of improper late fees, and general mismanagement of Sindles's account).) The Supreme Court has held that "a breach of contract, without more, 'does not amount to a cause of action cognizable under [the ICFA]'" and that the ICFA thus "should not apply to simple breach of contract claims." *Am. Airlines, Inc., v. Wolens*, 513 U.S. 219, 233 (1995) (quoting *Goembiewski v. Hallberg Ins. Agency, Inc.*, 635 N.E.2d 452, 460 (Ill. App. Ct. 1994)); *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract."). The only alleged conduct attributable to Ocwen which could also be construed as non-contractual is Ocwen's "harassing" telephone calls. (Compl. ¶¶ 116, 150(q).) However, Sindles himself links this to Ocwen's "obligations of good faith and fair dealing" which are concepts implicit in contract law. (*Id.* ¶ 150(q).) Sindles has failed to state a claim upon which relief can be granted under the ICFA. The motion to dismiss is granted, and Count III is dismissed without prejudice as alleged against Ocwen.

    d. <u>Count IV – Promissory estoppel</u>

Ocwen moves to dismiss Count IV based on Sindles's lack of pleading any conduct satisfying the elements of promissory estoppel. For reasons similar to those discussed in Count I, the court agrees. Here, Sindles does not dispute that the underlying detrimental reliance for which he seeks equitable relief

is "*Saxon's* promises of a loan modification." (Compl. ¶ 159 (emphasis added).) It was *Saxon's* unambiguous promise to assist in modifying the Mortgage, Sindles's reliance on *Saxon's* promises, and *Saxon's* reasonable expectation that Sindles would not sell his home, file for bankruptcy, or attempt to refinance elsewhere, which is central to Sindles's claim. (*Id.* ¶¶ 157-62.) Because Sindles in Count IV has made no allegations against Ocwen which state a claim for promissory estoppel based on Saxon's purported promise to modify Sindles's Mortgage, Count IV is dismissed without prejudice as alleged against Ocwen.

   e. Count V – Unjust enrichment

As a preliminary matter, there is much confusion regarding the current state of the law regarding the doctrine of unjust enrichment in Illinois. Specifically, there is debate as to whether unjust enrichment is an independent cause of action or whether it must be tied to an underlying claim in tort, contract, or statute. *See Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004) (holding that because the claim was not based in tort, contract, or statute, the only remaining substantive basis was unjust enrichment); *but c.f. Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. Ct. 2009) (failure to state a claim where unjust enrichment claim was not tied to other underlying claims). In an attempt to reconcile this perceived discrepancy, the Seventh Circuit developed a framework where unjust enrichment is defined as a claim *usually* tied to conduct forming the basis for a different claim, but not always. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). In those cases where unjust enrichment is tied to an underlying claim, the success of the unjust enrichment claim depends on the success of the other claim. *Id.*

In its motion to dismiss, Ocwen maintains that Sindles fails to state a claim because he has not adequately pleaded the unavailability of a remedy at law to justify this court granting equitable relief. (Ocwen's Mot. at 5.) "It is axiomatic that equitable relief is only available where there is no adequate remedy at law." *Gray v. Abbott Laboratories, Inc.*, 10 CV 6377, 2011 WL 3022274 at * 7 (N.D. Ill. July 22, 2011) (quoting *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir.

1994)); *see also Sherman v. Ryan*, 911 N.E.2d 378, 399 (Ill. App. Ct. 2009). It is unnecessary for the court to reach the question of whether Sindles has sufficiently pleaded the lack of an adequate remedy at law, however, because he fails to state a claim on other grounds.

The doctrine of unjust enrichment in the common law is based on an implied contract. *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 813 (Ill. App. Ct. 2007). Where an express contract exists pertaining to the conduct of the parties at issue, unjust enrichment cannot be applied. *Id*. at 814. As discussed in regards to Count II, Sindles has alleged that the Mortgage and Note are express contracts to which Ocwen is a successor in interest. (Compl. ¶ 132.) The existence of this express contract precludes the applicability of an unjust enrichment theory in this case. Sindles has failed to state a claim upon which relief can be granted under Count V; therefore, Ocwen's motion to dismiss is granted and Count V is dismissed with prejudice as alleged against Ocwen.

  f. <u>Count VI – FDCPA claim</u>

Ocwen seeks dismissal of Sindles's FDCPA claim on the grounds that Ocwen is not a "debt collecter" under 15 U.S.C. § 1692a, as a matter of law. Sections 1692e-f proscribe activities undertaken by "debt collectors." For purposes of the statute, "assignees [are treated] as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 537 (7th Cir. 2003); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (holding that the term "debt collector" is not meant to include, inter alia, "a mortgage servicing company . . . as long as the debt was not in default at the time it was assigned."). This is confirmed by a review of the legislative history of the FDCPA:

> Finally, the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; *mortgage service companies* and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing; and the collection of debts owed to a creditor when the collector is holding the receivable account as collateral for commercial credit extended to the creditor.

S. Rep. No. 95–382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1698 (emphasis added.) Sindles explicitly pleads that Ocwen's business is "servic[ing] residential mortgage

loans." (Compl. ¶ 11.) Therefore, Sindles's FDCPA claim against Ocwen may be properly stated only if the loan (Mortgage & Note) was in default at the time Ocwen took over Mortgage service. *Schlosser*, 323 F.3d at 537. Such an inquiry is heavily fact-based.

Sindles never specifically alleges that his Mortgage was placed in default prior to Ocwen's assignment, but instead identifies multiple occasions when he was informed that he was "delinquent" on mortgage payments. (Compl. ¶¶ 23, 25, 37, 41, 46, 71, 74, 78, 86, 88, 90.) Sindles also alleges that he was informed by Saxon that they "have the right to pursue foreclosure against him." (*Id*. ¶ 68.) Viewing these allegations in the light most favorable to Sindles, as the court must do, the court infers that if Saxon believed its right to pursue foreclosure had been triggered, then it also must have believed Sindles was in default. However, Sindles's Complaint is grounded in the idea that he was not actually delinquent or in default, but instead was being falsely reported as so because of Saxon's improper servicing of the Mortgage. For example, in early 2010 Sindles lobbied Saxon to correct its reporting error to the credit bureaus that his account was delinquent. (*Id*. ¶¶ 42, 45.) On February 4, 2010 Sindles received confirmation from TransUnion Credit Bureau that his mortgage was not listed as delinquent as of December 2009. (*Id*. ¶ 49.) But by 2011, immediately preceding Ocwen's assignment, Sindles's account statement indicated delinquency, late fees, negative escrow account balances, and positive suspense account balances. (*Id*. ¶¶ 105-11.) Accepting the allegations of Sindles's Complaint as true, and viewing them in the light most favorable to Sindles, the court concludes that at the time of Ocwen's assignment Sindles did not believe he was delinquent or in default, but understood that Saxon believed and reported him as such. At this point in the litigation, the court finds that Sindles has adequately pleaded Ocwen's status as a "debt collector" under the FDCPA. Ocwen's motion is denied with respect to Count VI.

    g.   Count VII – Negligent infliction of emotional distress

Ocwen asks the court to dismiss Sindles's claim for negligent infliction of emotional distress because Sindles's allegations involve intentional acts rather than negligent acts, and also because Sindles has failed to plead the existence of a duty outside of contract.

The court will turn first to the issue of inconsistent pleadings. Under the Federal Rules of Civil Procedure "[a] party may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, while the majority of Sindles's Complaint can be easily construed to reach acts committed "intentionally and deliberately," this is not dispositive. (Dkt. No. 48 ("Ocwen's Reply") at 4.) Sindles also specifically alleges that Ocwen "service[ed] the Note and Mortgage without proper and adequate care," "fail[ed] to ensure the integrity of [his] mortgage obligation," and "fail[ed] to use reasonable and necessary care . . . [or] otherwise carelessly and negligently . . . service[ed] [his] mortgage." (Compl. ¶¶ 173(d)-(g).) All of these allegations, if proven true, could constitute conduct which is negligent, but fails to rise to the level of intentional acts.

However, as a threshold to a properly pleaded negligent infliction of emotional distress claim, a plaintiff must set forth facts that allege "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991). Sindles alleges the required duty of care is created "by contract and common law . . . in connection with mortgage loan matters." (Compl. ¶ 171.) Because the implied duty of good faith and fair dealing is a concept rooted in contract law, however, it is not applicable to causes of action in tort. *Brackett v. Galesburg Clinic Ass'n*, 698 N.E.2d. 406, 410 (Ill. App. Ct. 1997). By failing to properly identify a non-contractual legal duty owed him by Ocwen, Sindles has failed to properly state a negligent infliction of emotional distress claim. Count VII is therefore dismissed with prejudice as alleged against Ocwen.

    h.   Count VIII – RESPA claim

Ocwen moves to dismiss Count VIII on the grounds that Sindles has failed to specifically identify correspondence which meets the requirements of a "qualified written request." 12 U.S.C. § 2605(e)(1)(B). Under RESPA, a "qualified written request" must identify the borrower and account and "include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the

borrower." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) (quoting RESPA, 12 U.S.C. § 2605(e)(1)(B)) (internal citations omitted). "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Catalan*, 629 F.3d at 687.

Without providing specific examples, Sindles alleges that both Saxon and Ocwen violated RESPA's qualified written requests requirements despite "receiving numerous letter [sic] which disputed the amount owed." (Compl. ¶¶ 176-83.) The court was able to identify only four separate instances where Sindles alleges contacting Saxon or Ocwen at all, and only two of those were in written form as the statute requires. Both letters were addressed to Saxon, not Ocwen. Specifically, Sindles points to a February 1, 2010 "QWR" correspondence with Saxon, "for information regarding his account," and a January 6, 2011 letter to Saxon requesting "investor information." (*Id.* ¶¶ 43, 98.) Sindles's conclusory allegations that Ocwen violated RESPA by failing to take action "within 60 days from receiving numerous letter [sic]," (*id.* ¶ 180), simply is too vague to give Ocwen "fair notice of . . . the grounds upon which [Sindles's RESPA claim] rests." *Twombly*, 550 U.S. at 555; *cf. Jones v. U.S. Bank Nat'l Ass'n*, No. 10 C 0008, 2011 WL 882758, at *6 (N.D. Ill. Mar. 11, 2011) (Holderman, C.J.) (finding allegations that plaintiff made a written demand on defendant and defendant did not respond sufficient to state a claim under RESPA). Accordingly, Count VIII is dismissed without prejudice.

2. <u>Claims Against DBNTC</u>

DBNTC first argues that Sindles's Complaint improperly named DBNTC as a party to this action, rather than naming DBNTC in its capacity *as trustee* for the mortgage loan pool which includes Sindles's Mortgage. (DBNTC's Mot. at 2.) DBNTC further contends that Sindles's Complaint should be dismissed because it "contains no allegations concerning the Trust." (*Id.* at 1-2).

Sindles's sole allegations against DBNTC are as follows:

4. At all times hereinafter mentioned, Defendant, Deutsche Bank National Trust Company, was and still is a resident of the State of California. Defendant is a company organized under the laws of the State of California, and Defendant maintains its principal place of business in the State of California. Defendant is doing business under the name of

> Deutsche Bank. Deutsche Bank is listed as the investor under [Sindles's] Saxon Loan Account Number 2000275862.
>
> . . .
>
> 98. On or about January, 6 2011, [Sindles] sent a letter to Saxon requesting information regarding ownership and investor information for his mortgage.
>
> 99. On or about January 6, 2011, [Sindles] received a letter stating they had received his request for ownership and investor information, and that they would respond soon to his request.
>
> 100. On or about January 7, 2011, [Sindles] received a letter from Saxon with the name of the investor.

(*Id*. ¶¶ 4, 98-100.)

The gravamen of Sindles's Complaint is that his Mortgage was "serviced improperly" and in an illegal manner. (Compl. ¶ 9, 11.) Although, Sindles identifies "Defendants" collectively as engaged in "service[ing] residential mortgage loans," (*id.* ¶ 11), this allegation is not supported by the remainder of the Complaint as it pertains to DBNTC. There are no factual allegations in the Complaint plausibly suggesting that DBNTC – either as named, or as trustee – is in the business of servicing mortgages, or that it in fact serviced Sindles's Mortgage.

In his responsive brief, Sindles posits a belief that in servicing the Mortgage, Saxon and Ocwen were acting on behalf of DBNTC as the investor. (Dkt. No. 49 ("Pl.'s Resp. to DBNTC's Mot.") at 4.) Specifically, Sindles asserts that DBNTC "contracted with Saxon and Ocwen to act on its behalf to service and manage [the Mortgage]." (*Id.*) This allegation is not part of Sindles's Complaint, which includes no allegations with respect to a relationship between DBNTC and either Saxon or Ocwen. "To plead the existence of an agency relationship, a plaintiff must allege a factual predicate to create the inference of agency." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009). The court may

consider information from responsive pleadings if it is "supplemental and consistent with the complaint and clarifies the information in the complaint." *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 1000 (N.D. Ill. 2002) (St. Eve, J.) (quoting *Anzaldua v. Chicago Transit Auth.*, No. 02 C 2902, 2002 WL 31557622, at *2 (N.D.Ill. Nov. 15, 2002)). In this case, however, Sindles's new allegation only serves to muddy the waters. Sindles has alleged that DBNTC is the "investor" in his Mortgage, and that Saxon and Ocwen were the "successors to New Century" on the same Mortgage. (Compl. ¶¶ 4, 132.) It is not clear to the court whether Sindles considers DBNTC a party to the Mortgage contract with attendant rights and responsibilities, such that a plausible inference can be drawn that Saxon and Ocwen were servicing the Mortgage on behalf of DBNTC. Sindles's unsupported theory that DBNTC was "conduct[ing] certain business through an agent," (Pl.'s Resp. to DBNTC's Mot. at 4), is inconsistent with the Complaint, which sets out no predicate facts necessary to infer an agency relationship between Saxon or Ocwen. Accordingly, DBNTC's motion is granted and all claims against DBNTC are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, defendant "Ocwen Loan Servicing, LLC's Motion to Dismiss" (Dkt. No. 9) is granted in part and denied in part. The counts in Sindles's Complaint purportedly alleging common law fraud claim (Count I), ICFA claim (Count III), promissory estoppel claim (Count IV), and RESPA claim (Count VIII) are dismissed without prejudice against Ocwen. Sindles's Complaint's purported claims of unjust enrichment (Count V) and negligent infliction of emotional distress (Count VII) are dismissed with prejudice. Ocwen's motion to dismiss Sindles's breach of contract and implied covenants claim (Count II) and FDCPA claim (Count VI) is denied. Counts II and VI remain pending against Ocwen.

Defendant "Deutsche Bank National Trust Company, As Trustee's Motion to Dismiss" (Dkt. No. 11) is granted, and all claims against DBNTC are dismissed without prejudice.  Ocwen's Answer is due on or before June 6, 2012.  Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before June 20, 2012.  This case is set for a report on status and entry of a scheduling order on June 26, 2012 at 9:00am.  The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   May 22, 2012